Filed 3/30/26  P. v. Shaw CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B347023 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA054450-02) |
| v. | |
| EMANUEL KEON SHAW, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Lisa M. Strassner, Judge.  Affirmed.

Emanuel Keon Shaw, in pro. per.; Allen G. Weinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

Emanuel Shaw appeals from the superior court's order denying his petition for resentencing under Penal Code section 1172.6[1] after the court ruled he was ineligible for relief because he was the actual perpetrator of the attempted murders. (See *People v. Jasso* (2025) 17 Cal.5th 646, 690 [actual killer is ineligible for relief under section 1172.6]; *People v. Strong* (2022) 13 Cal.5th 698, 710 [relief under section 1172.6 "is unavailable if the defendant was . . . the actual killer"].)  We appointed counsel to represent Shaw on appeal.  After reviewing the record counsel for Shaw filed a brief pursuant to *People v. Delgadillo* (2022) 14 Cal.5th 216 that did not identify any arguable issues.  After independently reviewing the record and the contentions in Shaw's supplemental brief, we have not identified any either. Therefore, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.     *A Jury Convicts Shaw on Two Counts of Attempted Premeditated Murder*

As described in this court's opinion in *People v. Shaw et al.* (Nov. 18, 2013, B239817) [nonpub. opn.]) (*Shaw I*), Emanuel and Irvin Shaw are brothers and members of the Inglewood Family Bloods Gang.[2]  Treven Hicks had been close friends with Shaw and Irvin since he was 13 or 14 years old, but their friendship ended when Shaw accused Hicks of exposing himself to Shaw's sister and hit Hicks in the eye.

---

[1]     Statutory references are to the Penal Code.

[2]     We refer to Irvin Shaw by his first name to avoid confusion.

Hicks lived in an apartment in Lancaster with Brandon Williams, who also knew Shaw and his brother Irvin. At some point Salima Shutes stayed with Hicks and Williams in their apartment.

During February and March 2010 Hicks and Williams witnessed multiple arguments between Irvin and Shutes, including a dispute over a tax refund. Irvin apparently had referred Shutes to a tax preparation company and hoped to receive a finder's fee when Shutes received her tax refund. Irvin claimed Shutes lied to him and said she did not receive the refund check. On March 8, 2010, while Shutes was living with Hicks and Williams, Williams again observed Irvin arguing with Shutes. On March 13, 2010 Williams saw Irvin slap Shutes and heard him call her a "bitch." Shutes said to Irvin, "I'm going to get my cousin. You don't know who you are fucking with." (*Shaw I, supra,* B239817.)

On March 15, 2010 Tiffanie Taylor drove Shutes and her cousin Ervin Ford to Lancaster, where Ford's brother Bernard lived. While they were at Bernard's apartment Shaw, Irvin, and several other men arrived in a black SUV. Ford and Bernard got into several fights with the men who got out of the black SUV. (*Shaw I, supra*, B239817.)

Taylor, Shutes, and Ford drove back to Hicks and Williams' apartment; Shutes and Ford were excited, and Ford bragged he had just beaten up Irvin. After hearing about the fight, Hicks asked them to leave the apartment. Hicks and Williams went outside to the driveway to watch them leave. (*Shaw I, supra*, B239817.)

As Taylor, Shutes, and Ford got inside Taylor's car, Irvin drove his black SUV in front of the driveway and blocked Taylor's

car from leaving. Irvin was driving, Shaw was in the front passenger seat, and two other men were in the back seat. Shaw and Irvin acknowledged Hicks and Williams with a head gesture, and Shaw fired a handgun multiple times at Taylor's car. The bullets went through the backseat window and hit Ford in the head, and Irvin drove away from the scene. Hicks and Williams escaped to their neighbor's home, and Taylor drove Ford and Shutes to the hospital. Williams returned to his apartment after an hour because the police wanted to talk to him and he felt Shaw and Irvin would not return while the police were at the apartment. Hicks stayed with his neighbor until midnight, and he did not report the incident to the police. (*Shaw I, supra*, B239817.)

Two months after the shooting incident, Irvin went to Hicks and Williams' apartment and asked, "Who is snitching?" and "Who is talking to the police?" Irvin seemed paranoid, not angry. Shortly after Irvin left the apartment, a police detective arrived and knocked on the door. Hicks told the detective that he had just missed Irvin. (*Shaw I, supra*, B239817.)

The police eventually arrested Shaw and Irvin, and the People charged them with four counts of attempted premeditated murder (§§ 187, subdivision (a), 664), shooting at an occupied motor vehicle (§ 246), and possessing a firearm as a felon (former § 12021, subdivision (a)(1)). The People alleged that Shaw and Irvin committed the crimes for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members, within the meaning of section 186.22, subdivision (b)(1)(C), and that Shaw personally discharged a firearm causing great bodily injury, within the meaning of

4

section 12022.53, subdivisions (c), (d), and (e)(1).  (*Shaw I, supra,* B239817.)

A jury convicted Shaw and his brother on two counts of attempted premeditated murder and one count of shooting at an occupied vehicle.  The jury also found Shaw guilty of possessing a firearm as a felon.  On the attempted murder convictions, the trial court sentenced Shaw and Irvin to two consecutive terms of life in prison with a minimum parole eligibility of seven years, plus for Shaw two consecutive terms of 25 years to life for the firearm enhancements.  The trial court imposed concurrent terms, or imposed and stayed under section 654 execution of terms, on Shaw's and Irvin's other convictions.  (*Shaw I, supra, supra*.)

B.    *The Superior Court Denies Shaw's Petition for Resentencing*

In November 2024 Shaw, representing himself, filed a form petition for resentencing under section 1172.6.  Shaw checked the box indicating he "could not presently be convicted of murder or attempted murder because of changes made to Penal Code sections 188 and 189, effective January 1, 2019" and asked the court to appoint counsel for him, which the court did.

The People opposed the petition for resentencing, arguing Shaw was not entitled to relief "because he was prosecuted and convicted as the perpetrator of the attempted murders of" Ford and Shutes.  The People attached to their opposition this court's 2013 opinion, the verdict forms, the jury instructions, trial transcripts, a juror question, and the information.

Before the court heard the petition for resentencing, Shaw filed a motion to replace his appointed counsel under *People v.*

*Marsden* (1970) 2 Cal.3d 118.  Shaw argued that he had a conflict with his appointed counsel because "[t]he court appointed attorney holds that . . . [Shaw] being the actual shooter holds no weight" and that his appointed counsel did not agree the gunshot injury was only "superficial . . . a known scratch to the skin only stated by the victim to be a gun shot wound with no evidence that the alleged victim was shot."  The court denied the motion without a hearing.

The superior court denied Shaw's petition for resentencing under section 1172.6, ruling he had not made a prima facie showing he was entitled to relief.  In denying the petition the court stated that, "even though the jury instructions included aiding and abetting and natural and probable consequences, those coupled with the jury questionnaires . . . are questions relating to Irvin. . . . [Shaw] was being tried under the theory as being the actual perpetrator and the person that fired the gun.  In addition, the jury's verdicts in finding that he personally, intentionally discharged a firearm causing great bodily injury during the attempted murders . . . further supports the conclusion that the [People] proceeded under a theory that Shaw was the actual perpetrator of the attempted murders of the two victims in the case.  Additionally, the People's theory at trial was the petitioner was the perpetrator of the crimes, including in the closing argument of the district attorney.  The prosecutor made it clear that the People's theory was that the petitioner in this case was the perpetrator of the crimes and the codefendant was prosecuted as an aider and abettor."

The court also stated that questions from the jury at trial "were very helpful to determining whether [Shaw] has made a prima face showing, the jury questionnaires were responsive to

that.  The jury asked, at the time of the trial, a question, quote, if [Irvin]—that's the codefendant—became aware of shooting after the fact and drove away and did not call the police, is that aiding and abetting in attempted murder.  And the question does exhibit the jury's finding that the codefendant was the driver during the shooting, not the actual shooter, which the jury found to be this petitioner, [Shaw].  Moreover, the court advised the jury that the codefendant [Irvin] was charged in each count as an aider and abettor. . . .  And the jury additionally asked the following question of this petitioner, [Shaw], if [Shaw] did not intend to kill the two victims in this case, or to kill one of the victims in the case, but that particular victim was in the kill zone, is [Shaw] guilty of attempted murder?  And the court in the case referenced them back to the attempted murder, CALCRIM [No.] 600, without any more, showing that this petitioner was prosecuted as the actual perpetrator in the attempted murder. . . .  Furthermore, the petitioner was also charged with possession of a firearm by a felon on the same date of the offense of the attempted murders.  And lastly, again, the jury found this petitioner guilty of personally, intentionally discharging a firearm causing great bodily injury during the attempted murders."

## DISCUSSION

As stated, we appointed counsel to represent Shaw in his appeal from the order denying his petition for resentencing.  After reviewing the record, appointed counsel advised this court he could not identify any arguable issues.  Appointed counsel advised Shaw on December 19, 2025 that he was filing a brief

7

stating he was unable to find arguable issues and that Shaw could personally submit any contentions he believed the court should consider. Counsel also sent Shaw a copy of his brief, as well as the record on appeal.

On January 9, 2026 we received a five-page supplemental brief from Shaw. In his supplemental brief Shaw argues that the superior court abused its discretion in denying his petition because he "was not identified by eyewitness/victim as being the shooter, but that his brother . . . was identified as being the actual shooter," and that the "jury questions, the closing argument, and the instructions" should apply to him as much as they did to his brother, whom the court later found was entitled to relief under section 1172.6, even though they were both "charged and convicted of the very same allegations and counts."[3] Shaw argues in the alternative that, even if he was the actual shooter, he was entitled to an evidentiary hearing under this court's decision in *People v. Nino* (2025) 111 Cal.App.5th 844 (*Nino*), that he was a "youth offender at the time of the offense," and that the superior court did not consider any "youth offender mitigation" before denying his petition.

---

[3] Attached to Shaw's five-page supplemental brief were exhibits relating solely to Irvin, including this court's opinion in *People v. Shaw* (Apr. 11, 2022, B306212) [nonpub. opn.]), as well as copies of minute orders on Irvin's petition for resentencing under section 1172.6. According to one of the minute orders, Irvin "was charged with attempted murder and jury instructions were given as to aiding and abetting and natural and probable consequences [and] the court will appoint counsel to investigate whether [a] prima facie showing has been made that he falls within the provisions of" section 1172.6.

Even though Shaw was tried as the actual shooter, he argues his brother was the actual shooter.[4]  Section 1172.6, however, does not "permit wholesale relitigation of findings supporting murder convictions in the context of section 1172.6 resentencing."  (*People v. Strong* (2022) 13 Cal.5th 698, 715; see *People v. Rodriguez* (2024) 103 Cal.App.5th 451, 458 ["Appellant cannot use a [section 1172.6] resentencing hearing to relitigate facts already determined, whether by plea, admission, or verdict."]; *People v. Daniel* (2020) 57 Cal.App.5th 666, 678 ["We cannot agree that [section 1172.6] authorizes a defendant to present new evidence to undermine a jury's finding of guilt under a particular theory of murder, effectively retrying the case."].)

Equally unavailing is Shaw's argument the jury instructions, closing arguments, and jury questions that applied to his brother, who was tried under an aiding and abetting theory, should have applied to him too.  "Section 1172.6 does not create a right to a second appeal, and [Shaw] cannot use it to resurrect a claim that should have been raised in his . . . direct appeal."  (*People v. Burns* (2023) 95 Cal.App.5th 862, 865.)  In other words, "[t]he mere filing of a section [1172.6] petition does

---

[4]     During closing argument, the prosecutor argued that, "in a criminal case, you can be guilty of a crime in multiple ways.  You can be a perpetrator or you can be an aider and abettor. . . .  But for our proposes here, we've got a perpetrator and an aider and abettor. . . .  But we've got Mr. Emanuel Shaw as the shooter.  He would be the perpetrator in our case here.  And we've got Mr. Irvin Shaw as the driver.  He would be the aider and abettor in our situation.  So perpetrator Emanuel Shaw committed the crime.  The defendant Irvin Shaw . . . knew the perpetrator intended to commit the crime."

9

not afford the petitioner a new opportunity to raise claims of trial error or attack the sufficiency of the evidence supporting the jury's findings." (*People v. Farfan* (2021) 71 Cal.App.5th 942, 947.) Thus, if Shaw wanted to argue the jury instructions were in some way erroneous, he had to make that argument in his direct appeal. (See *People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921, 936.)[5]

Also lacking in merit is Shaw's argument that, even if he was the actual shooter, he is entitled to relief under *Nino, supra,* 111 Cal.App.5th 844. In *Nino* this court held an actual shooter may be entitled to relief under section 1172.6 if he or she "could have been convicted of second degree felony murder based on a now-invalid theory of imputed malice." (*Nino,* at p. 854.) But Shaw was not convicted of second degree felony murder based on a now-invalid theory, and as we stated in *Nino*, a defendant remains ineligible for relief under section 1172.6 "with respect to a defendant's conviction of first degree murder or attempted murder." (*Nino,* at p. 849; see *People v. Coley* (2022) 77 Cal.App.5th 539, 548 [resentencing statute "applies by its terms only to attempted murders based on the natural and probable consequences doctrine"].)

Finally, Shaw argues the superior court failed to take into account that he was 23 years old when he committed his crimes. Youth can be a relevant factor in determining whether a

---

[5] In his direct appeal Shaw argued that he had a conflict with his counsel at the time the jury rendered its verdict, that he was denied effective assistance of counsel during the penalty phase of the trial, and that the trial court erred in failing to conduct a *Marsden* hearing when Shaw indicated he wanted a different court-appointed counsel for sentencing.

10

defendant had the mental state necessary for felony-murder or implied malice murder.  (*People v. Jimenez* (2024) 103 Cal.App.5th 994, 1001-1004; *People v. Pittman* (2023) 96 Cal.App.5th 400, 416-418.)  But that is not the case where the jury found the defendant acted with express malice and had the intent to kill. (See *People v. Diaz* (2026) 118 Cal.App.5th 545, 560 ["Each of the cases [the defendant] cites, however, concerned whether the defendant acted with reckless indifference to human life, a different mental state than intent to kill/express malice"].) Moreover, we generally "presume the trial court followed the law in exercising its duties and duly considered the evidence presented to it," and "the fact that a court did not specifically mention certain evidence does not mean that the court "ignored" that evidence."  (*People v. Jones* (2022) 86 Cal.App.5th 1076, 1092; see *People v. Caparrotta* (2024) 103 Cal.App.5th 874, 905 ["'In the absence of evidence to the contrary, we presume that the court "knows and applies the correct statutory and case law.""'].)

## DISPOSITION

The order is affirmed.

SEGAL, J.

We concur:

MARTINEZ, P. J.                    FEUER, J.